IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
NO. 4:16-CV-282-BO

| | |
|---|---|
| A.H., *by and through his parent*, H.C., and H.C., *on behalf of herself*, Plaintiffs, v. CRAVEN COUNTY BOARD OF EDUCATION, CARROLL G. IPOCK, II, *Chair*, KELLY L. FORBIS, *in her individual and professional capacity*, FANNIE E. RIVERS, *in her individual and professional capacity*, Defendants. | **ORDER** |

This matter is before the Court on defendants' motions to dismiss pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, [DE 16, 18], and plaintiffs' motion for leave to file. [DE 25]. The matters have been fully briefed and are ripe for ruling. For the reasons discussed below, the motions to dismiss are granted and the complaint is dismissed.

## BACKGROUND

On December 2, 2016, plaintiffs filed a complaint asserting substantive and procedural violations of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, discrimination in violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.*, violations of A.H.'s Fourth and Fourteenth Amendment rights under the United States Constitution, pursuant to 42 U.S.C. § 1983, violation of Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 20 U.S.C. § 794, as well as state law tort claims of battery and intentional and negligent infliction of emotional distress. [DE 1].

On March 16, 2017, defendants Craven County Board of Education ("Board") and Carrol Ipock filed a motion to dismiss, arguing that the Court lacks subject matter jurisdiction over the complaint and that the complaint fails to state a claim upon which relief can be granted. [DE 16]. On March 20, defendant Kelly Forbis also filed a motion to dismiss which raised essentially the same arguments. [DE 18]. Plaintiffs responded, [DE 22, 23], and defendants Board and Ipock filed a reply, [DE 26]. Plaintiffs also filed a motion for leave to file an Order for Appointment of Guardian Ad Litem from the Craven County Superior Court with their response. [DE 25].

## DISCUSSION

As an initial matter, and for good cause shown, the Court will grant plaintiffs' motion for leave to file to Order for Appointment of Guardian Ad Litem pursuant to Federal Rule of Civil Procedure 17(a)(3) and Local Rule of Civil Procedure 17.1.

The Court next turns to defendants' motions to dismiss and will first address the motions made under Rule 12(b)(1). Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a claim for lack of subject matter jurisdiction. When subject matter jurisdiction is challenged, the plaintiff has the burden of proving jurisdiction to survive the motion. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647-50 (4th Cir. 1999). "In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). The movant's motion to dismiss should be granted if the material jurisdictional facts are not in dispute and the movant is entitled to prevail as a matter of law. *Id.*

Defendants first argue that the Court lacks the subject matter jurisdiction to adjudicate plaintiffs' claims under the IDEA. The IDEA was enacted in part

2

> to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living.

20 U.S.C. § 1400(d)(1)(A). To further this end, IDEA offers federal funds to states in exchange for a commitment to furnish a "free appropriate public education" ("FAPE") to all children with certain physical or intellectual disabilities. 20 U.S.C. § 1401(3)(A)(i). A FAPE comprises "special education and related services" and includes both "instruction" tailored to meet a child's "unique needs" and sufficient "supportive services" to permit the child to benefit from that instruction. 20 U.S.C. §§ 1401(9), (26), (29); *see Board of Ed. of Hendrick Hudson Central School Dist., Westchester Cty. v. Rowley*, 458 U.S. 176, 203 (1982). An eligible child acquires a "substantive right" to such an education once a state accepts the IDEA's financial assistance. *Smith v. Robinson*, 468 U.S. 992, 1010 (1984).

Under the IDEA, an individualized education program ("IEP"), serves as the "primary vehicle" for providing each child with the promised FAPE. *Honig v. Doe*, 484 U.S. 305, 311 (1988); 20 U.S.C. § 1414(d). An IEP is crafted by the child's school officials, teachers, and parents and spells out a personalized plan to meet all of the child's "educational needs." 20 U.S.C. §§ 1414(d)(1)(A)(i)(II)(bb), (d)(1)(B). The IDEA establishes that any disputes involving the FAPE or IEP are to be resolved through state administrative procedures. 20 U.S.C. § 1415.

A person wishing to file suit under the IDEA in North Carolina must first file a petition with the Office of Administrative Hearings ("OAH"). *See E.L. ex rel. G.L. v. Chapel Hill-Carrboro Bd. of Educ.*, 975 F. Supp. 2d 528, 532 (M.D.N.C. 2013) (citing N.C. Gen. Stat. § 115C-109.6). A person may then appeal the decision at the OAH level to the State Board of Education which, "through its Exceptional Children Division, appoints an SRO [State Review Officer] to review the ALJ's [Administrative Law Judge's] findings appealed and issue an

independent decision." *Id.* Following a decision by the SRO, a person has ninety days within which to file suit in federal court. 20 U.S.C. § 1415(i)(2)(B).

"The district court's jurisdiction under the IDEA is limited to review of the final 'findings and decision' of the administrative proceedings." 20 U.S.C. § 1415(i)(2)(a). Therefore, prior to filing an action in United States District Court for claims under the IDEA, a parent must exhaust her administrative remedies. *E.L. ex rel. Lorsson v. Chapel Hill-Carrboro Bd. of Educ.*, 773 F.3d 509, 514 (4th Cir. 2014). "The IDEA's exhaustion requirement serves the important purpose of allowing states to use their special expertise to resolve educational disputes," *id.*, and a plaintiff's failure to exhaust administrative remedies deprives the federal courts of subject matter jurisdiction over an IDEA claim. *See, e.g., M.M. ex rel. D.M. v. School Dist. of Greenville County*, 303 F.3d 523, 536 (4th Cir. 2002).

The complaint alleges that plaintiff "filed a Petition for Contested Case based upon a dispute regarding the denial of a free and appropriate public education ("FAPE") to A.H. by the Board." [DE 1 at ¶ 97]. However, the complaint fails to allege that plaintiffs obtained any final findings or final decision from the state administrative proceedings that this Court could review. In fact, plaintiffs terminated that state administrative proceeding by voluntarily dismissing the Petition before it was fully adjudicated. [DE 16-1] Plaintiffs therefore have failed to allege that they pursued their administrative remedies to completion, and indeed have admitted to failing to do so.

Plaintiffs, while admitting that they have failed to meet IDEA's exhaustion requirement, argue that they were not required to in these circumstances. "The courts have recognized only three narrow exceptions to [the IDEA's] exhaustion requirement, each arising largely out of the legislative history of the IDEA: (1) when the administrative process would have been futile;

4

(2) when a school board failed to give parents proper notification of their administrative rights; or (3) when administrative exhaustion would have worked severe harm upon a disabled child." *M.M.*, 303 F.3d at 536. The burden of establishing an exception to the exhaustion requirement lies with the plaintiff. *Learning Disabilities Ass'n of Maryland, Inc. v. Board of Educ. of Baltimore County*, 837 F. Supp. 717, 723 (D. Md. 1993). "[T]he Court is not required to find that Plaintiffs are entitled to an exemption simply because they so state in their complaint. Instead, Plaintiffs must allege facts that, if proven, would support one of the narrow exceptions to IDEA's exhaustion requirement; 'they cannot rely on conclusory statements.'" *Id.* (internal citations omitted).

Here, plaintiffs first claim no need to exhaust because they "are challenging policies and practices of general applicability that are contrary to numerous federal laws." [DE 1 at 2]. Plaintiffs plead no facts to support this conclusory assertion. They have not identified any challenged policy of general applicability within their complaint, and all of the allegations in the complaint relate specifically to the individual treatment of A.H. by defendants. Furthermore, "structuring a complaint as a challenge to policies, rather than as a challenge to an individualized education program . . ., does not suffice to establish entitlement to a waiver of the IDEA's exhaustion requirement. Plaintiffs must demonstrate in addition that the underlying purposes of exhaustion would not be furthered by enforcing the requirement." *Learning Disabilities Ass'n*, 837 F. Supp. at 724. Here, plaintiffs have not demonstrated or put forth any argument as to why the underlying purposes of exhaustion, such as allowing states to use their special expertise to resolve educational disputes or allowing state agencies to correct errors on their own, would not be furthered if plaintiffs were required to exhaust their administrative remedies.

Plaintiffs also argue that exhaustion would be futile in this case because they "cannot obtain adequate relief through the administrative process," [DE 1 at 2], and because the ALJ "did not have the statutory authority to provide the relief sought." [DE 22 at 12]. In support of this argument, plaintiffs cite the ALJ's denial of their Motion for Temporary Restraining Order and Preliminary Injunction, [DE 22-4], and argue that this demonstrates that the ALJ "did not have the authority to aid Petitioner/Plaintiff A.H." [DE 22 at 12]. However, plaintiffs' motion before the ALJ sought only "to protect A.H. from individuals in a situation involving alleged assault and harm to him." *Id.* The ALJ's order stated that he was without jurisdiction "to issue *the type of restraining order* that Petitioner seeks." *Id.* (emphasis added). At no time did the ALJ conclude that he lacked jurisdiction to consider and order relief on plaintiffs' educational claims under the IDEA. Furthermore, Counts One through Four asserts claims under the IDEA and seek remedies available under the IDEA, and nearly identical claims were included in the plaintiff's state administrative process Petition which was later voluntarily dismissed. [DE 16-1]. That process, if completed and successful, would have given plaintiffs the relief they now seek in Counts One through Four, and plaintiffs cannot argue that the administrative process would be unable to grant them the relief they seek in these claims.

Plaintiffs also argue that they are not required to exhaust in these circumstances because the Board failed to inform H.C. that the investigation performed by attorney Richard Schwartz would not be independent, and that this failure caused her "to delay the assertion of her son's right to due process pursuant to the administrative procedures" under the IDEA. [DE 22 at 13]. Although the exhaustion requirement may be excused "when a school board failed to give parents proper notification of their administrative rights," *M.M.*, 303 F.3d at 536, that exception is inapplicable here. Failing to disclose that an investigation would not be independent is not a

6

failure to notify a plaintiff of her administrative rights, and plaintiffs were not precluded from pursuing their administrative remedies because they in fact filed a Petition and began the administrative process. Even if the filing of that Petition was delayed, there have been no facts alleged to show how such a delay was prejudicial to plaintiffs.

Finally, plaintiffs argue that they are not subject to the exhaustion requirement under the exception that it "would have worked severe harm upon a disabled child." *M.M.*, 303 F.3d at 536. Plaintiffs generally allege that "the disabled child could have suffered further injury" at the hands of his teachers. In support, plaintiffs point to alleged "incidents of physical abuse" that occurred in the school, including the use of physical restraints on A.H. during a crisis without utilizing proper de-escalation techniques which led to bruising, pushing A.H. into a corner in the classroom instead of a proper "sensory area" in a different room for reducing anxiety and de-escalation, and an incident in which defendant Rivers allegedly failed to restrain A.H. properly such that he hit his head during class to point his ear started to bleed. [DE 22 at 12–13]. These purported ongoing injuries and incidents of physical abuse are the methods A.H.'s teachers used to restrain him, and state administrative law judges have broad authority under the IDEA to direct appropriate changes to a child's educational program, including the methods used to accommodate disruptive manifestations of his disabilities. *See* 20 U.S.C. § 1415(b). While the ALJ may not have been able to issue a restraining order of the type sought by plaintiffs, the ALJ would have been able to remedy these alleged injuries by ordering a new IEP or directing that school employees utilize different methods for restraining A.H. Additionally, because these claims "relate to the discipline or safety of a student, the ability of staff to respond to manifestations of a student's disability, or maintaining order in the educational setting," then this Court is precluded from reviewing them until the state agency has issued its final findings and

decision as to these claims. *Z.G. v. Pamlico Cty. Pub. Sch. Bd. of Educ.*, No. 4:15-CV-183-D, 2017 WL 477771, at *7 (E.D.N.C. Feb. 3, 2017). Finally, and as another court has explained,

> mere allegations by plaintiffs of irreversible harm will not be enough to excuse the completion of administrative proceedings. Plaintiffs must provide a sufficient preliminary showing that the child will suffer serious and irreversible mental or physical damage (*e.g.*, irremediable intellectual regression) before the administrative process may be circumvented. In order to meet that threshold, plaintiffs must provide affidavits from competent professionals along with other hard evidence that the child faces irreversible damage if the relief is not granted.

*Komninos by Komninos v. Upper Saddle River Bd. of Educ.*, 13 F.3d 775, 779 (3d Cir. 1994); *see also Rose v. Yeaw*, 214 F.3d 206, 212 (1st Cir. 2000). Plaintiffs have not offered any evidence to show how exhaustion would have worked irreversible and severe harm upon the child, and certainly have not met this burden to show such harm through the type of hard evidence envisioned by the *Komninos* case.

Because none of the exceptions to the exhaustion requirement are applicable here, plaintiffs' failure to exhaust deprives this Court of jurisdiction to adjudicate plaintiffs' claims under IDEA, and they therefore must be dismissed for lack of subject matter jurisdiction.

Defendants also argue in their motions to dismiss that plaintiffs' claims under the ADA and Section 504 must likewise be dismissed for lack of subject matter jurisdiction for failure to exhaust. Section 1415(*l*) of the IDEA states that if a suit brought under another law "seek[s] relief that is also available under" the IDEA, the plaintiff must first exhaust the IDEA's administrative procedures. 20 U.S.C. § 1415(*l*). As the Supreme Court has recently held in interpreting Section 1415(*l*), a plaintiff is required to exhaust the IDEA's administrative remedies before filing a suit under Section 504 or the ADA when the "gravamen" or essence of a plaintiff's suit concerns the denial of a FAPE. *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 752, 755 (2017) ("A court deciding whether § 1415(*l*) applies must therefore examine whether a

plaintiff's complaint—the principal instrument by which she describes her case—seeks relief for the denial of an appropriate education."). The *Fry* decision therefore mandates that this Court examine the substance of plaintiffs' claims and directs that plaintiffs not be permitted to evade the IDEA's exhaustion requirement by "artful pleading." *Fry*, 137 S. Ct. at 755.

The Supreme Court offered direction for determining whether the gravamen of a complaint against a school or board concerns the denial of a FAPE or instead addresses some other form of disability-based discrimination. There are two questions the courts can ask when assessing the problematic claim:

> First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school—say, a public theater or library? And second, could an adult at the school—say, an employee or visitor—have pressed essentially the same grievance? When the answer to those questions is yes, a complaint that does not expressly allege the denial of a FAPE is also unlikely to be truly about that subject; after all, in those other situations there is no FAPE obligation and yet the same basic suit could go forward. But when the answer is no, then the complaint probably does concern a FAPE, even if it does not explicitly say so; for the FAPE requirement is all that explains why only a child in the school setting (not an adult in that setting or a child in some other) has a viable claim.

*Fry*, 137 S. Ct. at 756. As discussed in further detail below, the answer to these two hypothetical questions in this case is no. Each of plaintiffs' claims under federal law are viable only because they concern a child in a school setting and the alleged deprivation of an appropriate education, and thus plaintiffs' ADA and Section 504 claims are inextricably tied to their IDEA claims.

To support their claims under the ADA and Section 504, plaintiffs generally present two alleged injuries: first, that A.H. was subjected to a "hostile education environment," and second that he was denied equal access to educational services. As to this second injury which alleges that defendants denied A.H. equal access to educational services, plaintiffs first contend that they were not informed of independent living goals in A.H.'s IEP that would deny him "substantially

9

similar treatment at meal time as his peers." [DE 1 at ¶ 17]. This allegation arises from an incident in which defendant Forbis insisted that A.H. open his own milk carton at lunch which led to anxiety and distress for A.H. *Id.* at ¶ 16. Plaintiffs also contend that A.H. was treated differently than his peers when he was denied opportunities to participate in activities like his peers, such as Special Olympics, checking out library books, and eating in the cafeteria. *Id.* at ¶¶ 74, 88. Although pled as injuries under the ADA and Section 504, these claims are inextricably tied to plaintiffs' claims under the IDEA. According to the complaint, the development of independent living skills goals or objectives was intended to be a part of A.H.'s IEP, thus plaintiffs' claim that they were injured when not informed of such goals amounts to a challenge to the IEP and is therefore a claim under the IDEA. Second, the complaint admits as much when it asserts that the lunchtime incident denied A.H. a FAPE, *id.* at ¶ 16, and when it states that the denial of equal opportunities to participate in activities denied A.H. "a free appropriate public education." *Id.* at ¶ 74. By the complaint's own terms, these claims are inextricably tied to the IDEA claims and seek the same relief available under that statute.

As to the allegations relating to plaintiffs' claims of a hostile education environment, these involve incidents in which A.H.'s teachers used or failed to use restraints and which allegedly resulted in injuries to A.H. According to the complaint, A.H. became easily agitated, frustrated and defiant and engaged in sometimes self-injurious behaviors as a manifestation of his disability. [DE 1 at ¶¶ 21–22, 28, 31, 33–34, 71–73, 75, 77, 81, 94]. A.H.'s IEP's were thus developed to include a crisis plan and de-escalation techniques which included the use of restraints. *Id.* at ¶¶ 15, 22, 28, 71–72. Plaintiffs assert that the A.H.'s IEPs were developed against H.C.'s wishes that A.H. not be restrained "except where exigent circumstances existed," *Id.* at ¶¶ 15, 22, that the Board did not offer a "reasonable alternative" to placing A.H. back in

defendant Forbis' classroom and failed to develop a new IEP that would meet A.H.'s "specialized instructional needs and his newly formed anxiety and fear of Ms. Forbis" after an incident in which he was restrained, *id.* at ¶¶ 62–63, that defendant Rivers allegedly violated A.H.'s IEP and Crisis Intervention Plan ("CIP") by wearing padded arm protectors, which scared A.H. and increased his agitation and anxiety, *id.* at ¶ 71, and finally that A.H.'s teachers did not do enough to restrain A.H. or otherwise prevent him from injuring himself. *Id.* at ¶¶ 77–80.

These acts arise directly out of the defendants' alleged flawed attempts to address—or failures to address—A.H.'s severe disabilities in accordance with his IEP. They are thus inextricably tied to plaintiffs' claims under the IDEA, namely the claims that A.H.'s access to an appropriate education was denied due to defendants' failure to implement or create an IEP that addressed A.H.'s disabilities or moments of crisis properly. The proper recourse for these disagreements with the way an IEP is written or implemented is to first file a petition before the state and pursue those state administrative remedies. Plaintiffs failed to do so and therefore failed to exhaust their remedies.

The facts alleged in support of the plaintiffs' claims under the IDEA are virtually indistinguishable from the facts alleged in support of their claims under the ADA and Section 504, and the facts alleged in this complaint are practically identical to the facts alleged in the plaintiffs' prior due process Petition filed pursuant to the IDEA. "A further sign that the gravamen of a suit is the denial of a FAPE can emerge from the history of the proceedings. In particular, a court may consider that a plaintiff has previously invoked the IDEA's formal procedures to handle the dispute—thus starting to exhaust the Act's remedies before switching midstream." *Fry*, 137 S. Ct. at 757. As before, this guidance from the Supreme Court signifies that the essence of the instant suit is to seek redress for the denial of a FAPE because plaintiffs

previously sought redress through state procedures and sought relief under IDEA, and now have pled virtually the same facts and claims in the instant suit.

A final sign that plaintiffs' claims under the ADA and Section 504 are subject to the exhaustion requirement comes from the fact that the remedies plaintiffs now seek under those claims are remedies which would be available to them under IDEA. The declaratory and injunctive relief sought by plaintiffs, as well as reimbursement, compensatory education and services, and prospective placement, are all forms of relief available under the IDEA. While the additional claims for money damages are usually not available under the IDEA, *Sellers by Sellers v. Sch. Bd. of City of Mannassas, Va.*, 141 F.3d 524, 528 (4th Cir. 1998), plaintiffs are not allowed "to circumvent the exhaustion requirement of the IDEA by an inclusion of a request for compensatory damages." *A.W. ex rel. Wilson v. Fairfax County Sch. Bd.*, 548 F.Supp.2d 219, 225 (E.D. Va. 2008); *see also Wright v. Carroll County Bd. of Educ.*, No. 11-CV-3103, 2012 WL 1901380, at *7 (D. Md. May 24, 2012) (collecting cases).

The Court therefore concludes that the gravamen of plaintiffs' claims under the ADA and Section 504 concern the alleged denial of a FAPE, and therefore finds that these claims are subject to IDEA's exhaustion requirements and must also be dismissed.

The Court next turns to Count Five which is brought under 42 U.S.C. § 1983 and alleges a violation of A.H.'s federal constitutional rights by defendants Forbis and Rivers. Specifically, plaintiffs allege that defendants Forbis and Rivers violated A.H.'s rights under the Fourth Amendment to the United States Constitution by "utilizing unjustified, unreasonable, and excessive force against him" when they were A.H.'s teachers, and also that their "conduct in subjecting A.H. to severe and brutal physical abuse violated A.H.'s rights under the due process clause of the Fourteenth Amendment." [DE 1 at ¶¶ 142–44]. Defendant Forbis filed a motion to

dismiss arguing that, like plaintiffs' claims under the ADA and Section 504, this claim must also be dismissed for a failure to meet IDEA's exhaustion requirement.

Although *Fry* specifically discussed exhaustion under IDEA for claims brought under the ADA or Rehabilitation Act, it is clear that the same exhaustion requirement applies to claims under Section 1983 when such claims seek relief that is also available under the IDEA. The statute states in relevant part that,

> Nothing in [the IDEA] shall be construed to restrict or limit the rights, procedures, and remedies *available under the Constitution* . . ., except that before the filing of a civil action under such laws seeking relief that is also available under [the IDEA], the [IDEA's administrative procedures] shall be exhausted to the same extent as would be required had the action been brought under [the IDEA].

20 U.S.C. § 1415(*l*) (emphasis added).

Therefore, the Court must again as whether the gravamen of this Section 1983 claim concerns the denial of a FAPE. As before, the Court concludes that it does because the constitutional injuries alleged in the complaint arise directly out of the defendants' allegedly flawed attempts to address A.H.'s severe disabilities in accordance with his IEP. They are thus inextricably tied to plaintiffs' claims under the IDEA, namely that A.H.'s access to an appropriate education was denied due to defendants' failure to implement or create an IEP that addressed A.H.'s disabilities or moments of crisis properly.

Specifically, in Count One, brought under IDEA, plaintiffs allege that defendants "improperly used physical restraint against A.H. not as a last resort, but a first response instead of using other less invasive de-escalating techniques contained in the IEP." [DE 1 at ¶ 123]. This was one of a number of ways in which plaintiffs contend that the Board "failed to implement or incorporate material and/or appropriate elements of A.H.'s IEP." *Id.* Thus, the constitutional claims against defendants Forbis and Rivers which allege improper use of physical restraint are

13

based upon the same conduct that makes up a specific component of plaintiffs' FAPE claim. Plaintiffs' constitutional claims therefore are not materially distinguishable from their claims under IDEA and are inextricably tied to those claims. The proper recourse for these disagreements with the way an IEP is written or implemented is to first file a petition before the state and pursue those state administrative remedies, which plaintiffs failed to pursue to completion.

Moreover, the remedies sought under Count Five are remedies that are also available under IDEA. Plaintiffs seek a declaratory judgment that the defendant Board failed to properly implement the IEP and failed to use physical restraint as a last resort. Plaintiffs also seek compensatory education services, reimbursement for expenses, and injunctive relief enjoining "Defendant Board and its employees from using restraint against A.H. as a means of first response to his disabling condition." These forms of relief are all expressly countenanced in and available to plaintiffs under the IDEA.

Thus, because Count Five seeks remedies available under the IDEA and concern injuries related to the alleged denial of a FAPE, this claim is also subject to IDEA's exhaustion requirement and thus must also be dismissed.

Finally, plaintiffs brought several state law claims in Counts Eight through Eleven alleging battery, intentional infliction of emotional distress, and negligent infliction of emotional distress. Because plaintiffs' failure to exhaust their federal claims deprives this Court of subject matter jurisdiction over the claims over which the Court has original jurisdiction, the Court is also required to dismiss these state law claims over which the Court only exercises supplemental jurisdiction. *See Crosby v. City of Gastonia*, 635 F.3d 634, 644 (4th Cir. 2011).

For these reasons, the complaint must be dismissed in its entirety and the matter closed. Because it lacks jurisdiction over the complaint, the Court need not address defendants' other arguments in support of their motions to dismiss.

## CONCLUSION

In sum, plaintiffs' motion for leave to file [DE 25] is GRANTED and defendants' motions to dismiss [DE 16, 18] are GRANTED. The Clerk is DIRECTED to close the case.

SO ORDERED, this 14 day of August, 2017.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE